**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIA E. DEDURO,<br><br>Plaintiff,<br><br>v.<br><br>THE NEW JERSEY DEPARTMENT OF HEALTH, *et al.*,<br><br>Defendants. | Civil Action No. 24-4360 (RK) (RLS)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss the First Amended Complaint ("FAC," ECF No. 30) filed by Defendants the New Jersey Department of Health ("NJDOH"), Governor Philip Murphy, Judith M. Persichilli, Dr. Kaitlan Baston, David Kensler, Charles Moore, and Zuria Ryan (collectively, "Defendants"). (ECF No. 41; *see also* "Defs. Br.," ECF No. 41-1.) Plaintiff Maria Deduro ("Plaintiff") opposed the Motion ("Pl. Br.," ECF No. 42), and Defendants replied (ECF No. 43). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## I.   BACKGROUND[1]

### A.   THE STATE'S COVID-19 VACCINATION MANDATES

On August 6, 2021, Governor Murphy issued Executive Order No. 252 ordering that "[c]overed health care and high-risk congregate settings . . . must maintain a policy that requires

---

[1] The facts set forth in this Opinion are taken as true directly from the Amended Complaint for the sole purpose of deciding Defendants' pending Motion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

covered workers to either provide adequate proof that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly." (FAC ¶ 37 (alteration in original) (quoting N.J. Admin. Code, Exec. Order No. 252 (2021)).) On November 23, 2021, the NJDOH announced that all Division of Behavioral Health Services employees would need to "be vaccinated against COVID-19 because of the Centers for Medicare and Medicaid Services (CMS) Interim Final Rule requiring COVID-19 vaccination for staff in certain federally funded settings." (*Id.* ¶ 38.) The testing option would no longer be available to employees, and, instead, all employees would need receive the first dose of the COVID-19 vaccine by December 5, 2021 and the second dose by January 4, 2022. (*Id.* ¶¶ 39–40.)

"On December 1, 2021, the NJDOH announced that the CMS COVID-19 mandate 'is on hold due to a legal challenge' and that 'mandatory twice a week testing is still in effect for staff who are not fully vaccinated.'" (*Id.* ¶ 43.) In January of 2022, CMS resumed enforcement of its vaccine rule and Governor Murphy signed Executive Order No. 283 requiring that "[c]overed health care settings subject to the CMS rule must maintain a policy that requires covered workers to provide adequate proof that they are up to date with their COVID-19 according to" a revised schedule. (*Id.* ¶¶ 48–49 (quoting N.J. Admin. Code, Exec. Order No. 283 (2022)).) Accordingly, NJDOH announced that all Division of Behavioral Health Services employees would need to receive their first dose of the COVID-19 vaccine by January 27, 2022, the second dose by February 28, 2022, and a booster dose by the later of February 28, 2022 or three weeks after becoming eligible. (*Id.* ¶¶ 52–53.) The announcement further explained that religious and other exemption requests would need to be submitted by January 25, 2022. (*Id.* ¶ 54.)

## B.    PLAINTIFF'S EMPLOYMENT AND REQUEST FOR A RELIGIOUS EXEMPTION

Plaintiff has worked as a nurse since 1992, and for the State of New Jersey since 1998. (*Id.* ¶¶ 24, 26.) "[A]round 2000," Plaintiff began working at Ann Klein Forensic Center ("AKFC"), which is part of the NJDOH's Division of Behavioral Health Services. (*Id.* ¶¶ 28–29.)

On December 21, 2021, Plaintiff, a practicing Fundamental Baptist, requested a religious exemption from the vaccine requirement based on her belief that the vaccines were derived from aborted fetal cells and that taking the vaccine would be a sin. (*Id.* ¶¶ 55–60.) Along with the exemption request, she submitted a letter from her pastor explaining that "[t]he Bible teaches the sanctity of Human life and the biblical understanding that abortion is murder and the shedding of innocent blood. Many Bible believers are seeing this Covid vaccine as the living benefiting from the innocent babies who have been murdered in the womb. It is clearly stated that these vaccines use products derived from using aborted fetal cell lines." (*Id.* ¶¶ 58–59 (quoting ECF No. 30-3).) Accordingly, "Plaintiff believes that taking the COVID-19 vaccine 'would be sinning against the Living God.'" (*Id.* ¶ 60 (quoting ECF No. 30-3).)[2] In a letter dated March 15, 2022, NJDOH denied Plaintiff's request, reasoning that exempting her would pose an undue hardship, threaten the safety of others, and require removing some of her essential job functions. (*Id.* ¶¶ 72–73.) The letter further explained that Plaintiff could face discipline, including termination, if she did not provide proof of vaccination by February 28, 2022.[3] (*Id.* ¶ 74.) The letter noted that "[f]or purposes of this

---

[2] Although not discussed in her Complaint itself, Plaintiff's exemption request form also indicates that she objected to the COVID-19 vaccine on the basis of her belief that the vaccine "could cause more harm than good to the body." (ECF No. 30-2.) Such beliefs are "medical" rather than "religious," *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017), and do not implicate the First Amendment, *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir. 1981).

[3] It seems that this date simply restated the timeline created by NJDOH's vaccine policy. (*See* FAC ¶ 53 (discussing the timeline created by NJDOH). Plaintiff alleges that she was given forty-eight hours to comply with the policy. (*Id.* ¶ 118.) Plaintiff's first "Preliminary Notice of Disciplinary Action" and the decision rendered after her March 29, 2025 hearing also indicate that she was given forty-eight hours from receipt of the letter to be vaccinated. (ECF No. 30-7, 30-8.)

denial, the Department does not take a position on the sincerity of your religious belief." (ECF No. 30-4.)

Following the denial of her request, Plaintiff and other employees went to the office of AKFC Employee Relations Coordinator, Charles Moore, to ask why their requests had been denied. (FAC ¶¶ 17, 76.) Moore responded that the decisions came from "downtown," and Plaintiff surmises that this was a reference to the Governor's office. (*Id.* ¶ 78.) Plaintiff alleges that NJDOH did not grant any religious exemptions, but that they did grant medical exemptions. (*Id.* ¶¶ 80– 82.). She alleges that NJDOH categorically denied religious exemptions. (*Id.* ¶ 119.) On March 16, 2022, Plaintiff filed a grievance with the State of New Jersey and "Discrimination Complaint Processing Form" with the State of New Jersey Civil Service Commission. (*Id.* ¶¶ 83–86.)

On March 22, 2022, Plaintiff was served with a "Preliminary Notice of Disciplinary Action" and suspended with pay for violating Executive Order No. 283. (*Id.* ¶¶ 88–90.) On March 29, 2022, after a hearing that same day before Defendant Zuria Ryan, Plaintiff was served with another "Preliminary Notice of Disciplinary Action" and suspended without pay for violating the Executive Order. (*Id.* ¶¶ 91–97.) Plaintiff was given seventeen days to request an additional hearing. (ECF No. 30-9.) Plaintiff does not allege that she requested this additional hearing. Despite the vaccine requirement being lifted, Plaintiff has not been reinstated because she will not sign a release of her legal claims. (FAC ¶¶ 100–01.)

### C.    PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on March 28, 2024. (ECF No. 1.) On February 20, 2025, Defendants moved to dismiss. (ECF No. 29.) Plaintiff responded by filing the FAC on February 24, 2025, (*see* FAC), thereby rendering the motion to dismiss moot (ECF No. 31). The FAC brings substantive due process, procedural due process, equal protection, and First Amendment claims under 42 U.S.C. § 1983; claims for religious discrimination, genetic characteristic and information

discrimination, and retaliation under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD"); and claims for violations of the New Jersey Constitution under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 ("NJCRA").

On May 1, 2025, Defendants filed the present Motion, arguing that Plaintiff had not shown the requisite personal involvement by the individual defendants for a Section 1983 claim, that her claims against the individual defendants were foreclosed by the doctrine of qualified immunity, that her NJLAD claims failed because Defendants acted for nondiscriminatory reasons, that her claims against NJDOH were foreclosed by sovereign immunity, and that her claim against Zuria Ryan was foreclosed by quasi-judicial immunity. Plaintiff filed an opposition brief, and Defendants submitted a reply brief.

## II.    LEGAL STANDARD

### A.    RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear the claim. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* The "trial court is free to weigh the evidence and satisfy itself as to

the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortensen*, 549 F.2d at 891).

### B.    RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, a court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis removed) (internal quotation marks omitted).

## III.    DISCUSSION

For the reasons set forth below, the Court dismisses all of Plaintiffs' federal claims on qualified immunity grounds and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under the NJCRA and NJLAD. Accordingly, despite the numerous grounds for dismissal raised by Defendants, the Court focuses its analysis on qualified immunity and supplemental jurisdiction.

### A.    QUALIFIED IMMUNITY

Defendants argue that Murphy, Persichilli, Baston, Kensler, Moore, and Ryan are entitled to qualified immunity and thus Plaintiff's Section 1983 claims (Counts I through IV) against them are barred. Defendants assert that, at the time that Plaintiff was suspended without pay, there was no clearly established right under the Due Process Clause (substantive and procedural due process) of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, or the Free Exercise Clause of the First Amendment for a religious objector working in a state healthcare facility to refuse to comply with a state-issued vaccine mandate. (Defs. Br. at 15–29.)

The qualified immunity doctrine "shield[s] government officials performing discretionary functions . . . 'from liability [for] civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010) (internal quotation marks omitted). Qualified immunity is not a "mere defense to liability" but rather "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

A court analyzing a defense of qualified immunity must determine *both* (1) whether the plaintiff has shown a violation of a constitutional right and, (2) whether the right was "clearly established" at the time of the alleged constitutional violation. *Id.* "While issues of fact may preclude a definitive finding on the question of whether the plaintiff's rights have been violated, the court must nonetheless decide whether the right at issue was clearly established" as "[f]ailure to do so is error." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 n.4 (3d Cir. 2015). For a constitutional right to be clearly established, it "must be defined with a 'high degree of specificity.'" *Dennis v. City of Phila.*, 19 F.4th 279, 288 (3d Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see Summerville v. Fuentes*, No. 19-3240, 2021 WL 4129563, at *2 (3d Cir. Sept. 10, 2021). "[C]ourts are 'not to define clearly established law at a high level of generality.'" *Spady*, 800 F.3d at 638 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To accept too broad a version of the right at issue would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A court is "thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." *Id.* (cleaned up). The

8

confines of a clearly established constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted); *see Summerville*, 2021 WL 4129563, at *2.

The Third Circuit's construction of the right at issue for purposes of qualified immunity in *Spady v. Bethlehem Area School District* is instructive for demonstrating the level of specificity with which the right must be construed. In that case, the mother of a deceased 15-year-old boy brought a Section 1983 case against the school district, her son's physical education teacher, and other district employees after her son died of "a rare form of asphyxiation known as 'dry drowning' or 'secondary drowning'" after participating in a mandatory swim class at school. *Spady*, 800 F.3d at 635. While in the deep end during swim class, the decedent "ran into a group of students and was submerged for a matter of seconds, possibly inhaling or swallowing water as he resurfaced." *Id.* at 636. After sitting on the bleachers for a few minutes, the decedent asked his physical education teacher if he could remain out of the pool for the rest of class. *Id.* The decedent's physical education teacher refused, and the decedent reentered the water for the remainder of swim class. *Id.* Approximately an hour later, in another class, the decedent fell from his seat and began having a seizure; he was pronounced dead later that day. *Id.*

The Third Circuit reviewed the district court's assessment of whether qualified immunity barred the plaintiff's Fourteenth Amendment due-process claim premised on the state-created-danger theory of liability. In doing so, the Third Circuit defined "[t]he specific constitutional right under the Due Process Clause" in the specific context of the case[4] as "the right to affirmative

---

[4] The Third Circuit stated that the specific context of the case was "a student who experiences a brief submersion under water, exits the pool and complains of chest pain, is ordered to return to the pool after a several-minute respite, then stays in the shallow end of the pool for the remainder of the class, and does not exhibit signs of serious distress until more than one hour later." *Spady*, 800 F.3d at 638.

intervention by the state actor to minimize the risk of secondary or dry drowning." *Id*. at 638. The Third Circuit framed the question "for qualified immunity purposes" as "whether the law in this context was so well-established that it would have been apparent to a reasonable gym teacher that failure to take action to assess a non-apparent condition that placed the student in mortal danger violated that student's constitutional right under the state-created-danger theory of liability." *Id*. at 638–639.

1.     Substantive Due Process

Plaintiff first argues that the vaccine mandate violated her substantive due process rights under the Due Process Clause of the Fourteenth Amendment. (Pl. Br. at 15.). This claim fails on the first prong of qualified immunity because Plaintiff has failed to allege facts that "make out a violation of a constitutional right." *Spady*, 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232). In reviewing substantive due process claims, courts "apply rational basis review unless there has been a violation of a fundamental right." *Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 78 (3d Cir. 2024). "As federal courts have uniformly held, there is no fundamental right to refuse vaccination." *Id.* (collecting cases); *see also Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905). Accordingly, the mandate is subject to rational basis review. *Child.'s Health Def., Inc.*, 93 F.4th at 81. It clearly survives rational basis review because it is related to the state's "undoubtedly rational," *id.*, interest in "prevent[ing] outbreaks and reduc[ing] transmission" of COVID-19., N.J. Admin. Code, Exec. Order No. 283 (2022) (identifying this interest); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam) ("Stemming the spread of COVID–19 is unquestionably a compelling interest . . . .").

Perhaps recognizing this, Plaintiff contends that the actual substantive due process violation is not the mandate itself but the "arbitrary and capricious denial of religious exemptions" while Defendants granted "comparable medical ones." (Pl. Br. at 15.) However, this is essentially

a restatement of her equal protection argument because she argues that religious exemption requests were singled out for worse treatment than medical exemption requests. Accordingly, the Court will address this argument alongside her equal protection claim. *See Berg v. Egan*, 979 F. Supp. 330, 335 (E.D. Pa. 1997).

### 2.    Equal Protection and Free Exercise

Here, the Court will address Plaintiff's free exercise and equal protection claims, along with what remains of what she characterizes are her substantive due process claim, together. The Court has already explained why it is treating her substantive due process and equal protection claims together. The Court also addresses her free exercise claim here because it asserts essentially the same right as her equal protection claim. *See Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 99 (3d Cir. 2009).

Plaintiff contends that the rights at issue under the Due Process (substantive due process) and Equal Protection Clauses of the Fourteenth Amendment and the Free Exercise Clause of the First Amendment are the right to not be subject to the "arbitrary and capricious denial of religious exemptions," "[t]he right to equal treatment of religious exemption requests," and "[t]he right to equal treatment under the law, particularly where religious and secular exemption requests are treated differently without justification." (Pl. Br. at 15, 22, 24.) Based on the Third Circuit's analysis in *Spady*, the Court finds that Plaintiff construes the rights at issue too broadly and with very little tie to the specific context of this case. This case arose in a specific context: a healthcare worker employed at a state-run healthcare facility during a global pandemic sought a religious exemption to state-mandated vaccination due to the alleged use of products derived from aborted fetal cells in the vaccine. The policy allowed employees to seek both religious and medical exemptions to the vaccine mandate. She was denied a religious exemption, filed a grievance citing

discrimination, received notice of suspension without pay, and was ultimately suspended without pay after a hearing.

In light of this specific context, the Court defines the specific constitutional right at issue under the Due Process Clause (substantive due process), the Equal Protection Clause, and the Free Exercise Clause as follows: the right of a state employee during a global pandemic to be granted a religious exemption to state-mandated vaccination based on the use of fetal cells in the development of the vaccine under a state vaccination regime that provides equal treatment to religious and medical objections to the vaccine. Therefore, the question for purposes of qualified immunity is whether the law in this context was so well-established that it would have been apparent to a reasonable person in Defendants' position that denial of such a religious exemption would violate a state employee's constitutional rights under the Due Process (substantive due process) and the Equal Protection Clauses of the Fourteenth Amendment and the Free Exercise Clause of the First Amendment.

Now that the Court has defined the requisite right, it must determine whether that right was clearly established at the time of Plaintiff's suspension.[5] To determine whether a right is clearly established, a court must first look to the Supreme Court of the United States for precedent. *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017); *see also Croft v. Donegal Twp.*, No. 21-1812, 2022 WL 3697341, at *2 (3d Cir. Aug. 26, 2022). "In the absence of Supreme Court precedent, [the court] may rely on 'a robust consensus of cases of persuasive authority in the Court

---

[5] This analysis often "presents unique difficulties at the pleading stage." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025). Here, however, because the Complaint contains "the case-specific details needed to conduct the clearly established analysis," the Court is able to determine whether the right at issue was clearly established. *Id.*; *see id.* at 89 (denying qualified immunity at the motion to dismiss stage where the complaint lacked "vital facts and details needed to understand the specifics of what happened" (internal quotation marks omitted)); *see also Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–71 (3d Cir. 2016) (ordering the district court to dismiss a case on qualified immunity grounds because the law was not clearly established).

of Appeals.'" *Croft*, 2022 WL 3697341, at *2 (internal quotation marks omitted) (*Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)). While the right must be defined with a high degree of specificity in light of the specific context of the case, prior precedent need not have "indistinguishable facts." *Dennis*, 19 F.4th at 288.

Plaintiff has failed to show that the constitutional right at issue was clearly established. *See Mammaro*, 814 F.3d at 170. None of the cases that Plaintiff cites involve the particular context in which Plaintiff's claim arose—namely, the decision to deny Plaintiff's request for a religious exemption based on the reasons stated on her form, in the face of a state-wide vaccination mandate and global pandemic. Therefore, these cases could not have given notice to a reasonable person in Defendants' position that he was violating Plaintiff's clearly established constitutional rights under the Due Process Clause, the Equal Protection Clause, and the Free Exercise Clause. The Court has also not identified any cases clearly establishing the constitutional right at issue.

Generously, the following three cases are the closest that Plaintiff comes to citing prior Supreme Court precedent implicating the specific right at issue: *Employment Division v. Smith*, 494 U.S. 872 (1990), *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), and *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). (Pl. Br. at 22 (citing these cases).) Yet, they remain inapplicable to the present case. While the facts of these prior Supreme Court cases need not be indistinguishable from this one, they each arise in vastly different contexts and do not implicate the right that this Court defined with a high degree of specificity, as required.

In *Smith*, the Supreme Court held that Oregon could prohibit religious peyote use within the general criminal peyote prohibition and thus deny unemployment benefits to individuals discharged for using peyote for religious purposes without running afoul of the Free Exercise Clause. 494 U.S. at 874. The Court explained that "[w]e have never held that an individual's

13

religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Id.* at 878–79.

In *Church of Lukumi Babalu Aye*, a Santeria church brought a Section 1983 claim under the Free Exercise Clause challenging city ordinances that banned ritualistic animal sacrifice. 508 U.S. at 527–528. The Court determined that the "suppression of the central element of the Santeria worship service was the object of the ordinances" and, therefore, they were not considered neutral under the First Amendment. *Id.* at 534. The Court voided the ordinances, concluding that the "legitimate governmental interests in protecting the public health and preventing cruelty to animals could be addressed by restrictions stopping far short of a flat prohibition of all Santeria sacrificial practice." *Id.* at 538.

Finally, in *Fulton*, a state-licensed foster care agency affiliated with the Roman Catholic Archdiocese and three foster parents brought a Section 1983 claim under the Free Exercise and Free Speech Clauses of the First Amendment challenging Philadelphia's refusal to contract with the agency unless it agreed to certify same-sex couples as foster parents. 593 U.S. at 530–31. The Court explained that the city's policy of refusing to contract with agencies that discriminated on the basis of sexual orientation was not generally applicable because it allowed exceptions to be granted "at the sole discretion of the Commissioner [of the Department of Human Services]." *Id.* at 535 (internal quotation marks omitted). The Court reasoned that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 537 (cleaned up). Accordingly, the Court applied strict scrutiny and held that the city had violated the First Amendment. *Id.* at 541–42.

14

Relying on these cases, Plaintiff argues that Defendants acted unconstitutionally by categorically denying religious exemptions while simultaneously granting medical ones. These cases, however, were not concerned with a state-run hospital employer during a global pandemic, and they did not hold that medical and religious exemptions needed to be treated identically. Accordingly, they do not address the "specific context" of this case. *Spady*, 800 F.3d at 638; *see Brewer v. Dauphin Cnty. Prison*, 21-1291, 2022 WL 16855566, at *4 (M.D. Pa. Nov. 10, 2022) (analyzing, for qualified immunity purposes, whether there was an "established constitutional right in the COVID-19 context").

In addition to these Supreme Court cases, Plaintiff identifies two federal appellate cases involving COVID-19 vaccination mandates—one from the United States Court of Appeals for the Third Circuit and one from the United States Court of Appeals for the Second Circuit. The Third Circuit case, *Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir. 2024), was decided after the denial of Plaintiff's religious exemption and after her suspension. Thus, it could not have served as notice to a reasonable person in Defendants' position that their denial of Plaintiff's religious exemption was unconstitutional. *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam) (explaining that cases "that postdate the conduct in question . . . are of no use in the clearly established inquiry").

The Second Circuit case, *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) (per curiam), arose in a similarly distinct posture. In that case, the Second Circuit reversed the denial of a preliminary injunction sought by teachers and school administrators working in New York City schools who were denied religious exemptions to the city's COVID-19 vaccine mandate. *Kane*, 19 F.4th at 158. The Second Circuit determined that, while plaintiff's facial challenge to the mandate was likely to fail, their as-applied challenge to the mandate likely violated the First

15

Amendment due to the specific criteria applied by the city to religious exemptions. *Id.* at 167–69. Specifically, the policy required that exemption requests "shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (*e.g.*, from an online source), or where the objection is personal, political, or philosophical in nature." *Id.* at 168 (internal quotation marks omitted). The Second Circuit reasoned that "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith—runs afoul of the Supreme Court's" precedent. *Id.*

It is highly improbable that the Second Circuit's holding on the preliminary injunction motion in *Kane* would have put a reasonable person in Defendants' position on notice that denying Plaintiff's religious exemption in the context of this case would have violated her constitutional rights. The Second Circuit emphasized that its decision was "exceedingly narrow," and Plaintiff has not alleged the type of scrutiny of religious beliefs that was at issue in *Kane*. *Id.* at 167; (*see also* ECF No. 30-4 (letter denying Plaintiff's religious exemption noting "the Department does not take a position on the sincerity of your religious belief").) However, even if *Kane* did create such notice, "a single out-of-circuit case is insufficient to clearly establish a right" for purposes of qualified immunity. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 451 (3d Cir. 2020).[6]

---

[6] Even if the Court were to construe the right more broadly, the result would be the same. The right of an employee of a state-run healthcare facility during a global pandemic to have her religious exemption request considered under a policy that did not categorically reject religious exemptions was not clearly established. *Smith*, *Church of Lukumi Babalu Aye*, and *Fulton* are still distinguishable because they did not involve an employee of a state-run healthcare facility during a global pandemic, and the Court has located no other cases clearly establishing this right. That is sufficient to grant qualified immunity.

Additionally, in *Spivack*, the Third Circuit explained that "policies need not permit religious exemptions to be neutral, so long as the lack of an exemption does not reflect policymakers' hostility toward religion." 109 F.4th 158, 168. The Third Circuit further explained that other things could justify removing religious exemptions. *Id.* at 169. Admittedly, this case is somewhat distinguishable because the terms of

In sum, because the right at issue in this case was not clearly established at the time of Plaintiff's suspension, the Court finds that Defendants Murphy, Persichilli, Baston, Kensler, Moore, and Ryan are entitled to qualified immunity on Counts I, III, and IV. *C.f.*, *Jimenez-Mendez v. Or. Health & Sci. Univ.*, No. 23-1190, 2024 WL 326598, at *5 (D. Or. Jan. 29, 2024) (concluding that it was not "clearly established under the Free Exercise Clause that, during a pandemic, the [individual defendants] were barred from (1) attempting to distinguish between religious and secular objections to a vaccine and (2) in that effort, denying exemptions to a state-mandated vaccine mandate to healthcare workers who expressed ostensibly religious objections to the use of fetal cells in the development of the vaccine"); *MacDonald v. Or. Health & Sci. Univ.*, 689 F. Supp. 3d 906, 920 (D. Or. 2023) (finding that the defendants sued in their individual capacity under Section 1983 were entitled to qualified immunity as "the right to refuse a state-mandated vaccine by a healthcare worker who works in-person with vulnerable populations due to allegedly religious concerns about 'fetal cells' and 'bodily integrity or sanctity' was not clearly established at the time [the individual defendants] denied [the p]laintiff's religious exemption").[7] Therefore, Counts I, III, and IV are dismissed.

---

this policy, unlike the one in *Spivack*, allow for religious exemptions. This nudges the case closer to *Fulton* where the Supreme Court reasoned that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless [of] whether any exceptions have been given" 593 U.S. at 537. However, as Plaintiff pleads her case, Defendants did not just deny all religious exemptions, they had a *categorical policy* of doing so. (FAC ¶ 119.) Therefore, Plaintiff essentially pleads herself out of the ambit of *Fulton* and puts this case closer to *Spivack*. This further suggests that this right was not clearly established under *Fulton*.

[7] *See also Kopulos v. Pisaneschi*, No. 24-926, 2025 WL 2239337, at *4 (N.D. Ill. Aug. 6, 2025) ("[The plaintiff] has failed to point to any precedent, and this Court has found none (whether in the Seventh Circuit or not), to support that [the p]laintiff's right to be free from a COVID-19-vaccination mandate were clearly established during the relevant period . . . . By contrast, the weight of precedent strongly favors the contrary view: if anything was clearly established at the time of the pandemic, it was that mandatory vaccination policies did not offend the Constitution."); *Ray v. Wash. State Dep't of Health & Hum. Servs.*, No. 23-465, 2025 WL 1993174, at *6–7 (W.D. Wash. July 17, 2025) (granting qualified immunity to individual

3.    Procedural Due Process

Plaintiff also claims that Defendants violated her procedural due process rights under the

Due Process Clause by indefinitely suspending her without pay. (Pl. Br. at 17–19.) This claim fails

on the first prong of qualified immunity because Plaintiff has failed to allege facts that "make out

a violation of a constitutional right." *Spady*, 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232).

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must

allege that (1) [s]he was deprived of an individual interest that is encompassed within the

Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available

to [her] did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34

(3d Cir. 2006) (internal quotation marks omitted).

As an initial matter, Plaintiff has a property interest in her public employment. *See*

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). However, Plaintiff has not

adequately alleged that "the procedures available to [her] did not provide due process of law." *Hill*,

455 F.3d at 234 (internal quotation marks omitted).

Due process requires notice and an opportunity to be heard. *See In re Tribune Media Co.*,

902 F.3d 384, 397 (3d Cir. 2018); *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). However, a

pretermination hearing "need not be elaborate." *Loudermill*, 470 U.S. at 545. A "tenured public

_____

defendants against Section 1983 claims brought by Washington State Department of Social and Health Services employees who had requested religious and medical exemptions to Washington's COVID-19 vaccine mandate); *Brandon v. Bd. of Educ. of St. Louis*, No. 22-635, 2025 WL 1360684, at *1, 24–26 (E.D. Mo. May 8, 2025) (finding that the individual defendants were entitled to qualified immunity where the plaintiffs were either suspended or terminated after the school board denied every request to be religiously exempt from the city's COVID-19 vaccine mandate); *Mumin v. City of New York*, 760 F. Supp. 3d 28, 39, 62–64 (S.D.N.Y. 2024) (granting qualified immunity to individual defendants against Section 1983 claims brought by former New York City Department of Corrections employee who was denied a religious exemption to the city's COVID-19 vaccine mandate); *Bellard v. Univ. of Tex. Md Anderson Cancer Ctr.*, No. 22-88, 2023 WL 6373906, at *1, 8–9 (S.D. Tex. May 16, 2023) (finding that the individual defendants were entitled to qualified immunity in a case brought by physicians at a Texas-run cancer center who were denied religious exemptions to the facility's COVID-19 vaccine mandate).

employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Id.* at 546. Requiring "more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*[8]

Plaintiff alleges due process violations in two distinct processes. The Court will analyze each in turn. The first process that Plaintiff points to is the rejection of religious exemption request. Plaintiff requested an exemption from the vaccine mandate, and, in a letter dated March 15, 2022, NJDOH denied Plaintiff's request. Plaintiff argues that the review process failed to provide individualized consideration of her request, the denial failed to give specific reasons why her beliefs could not be accommodated, and the denial provided her with only forty-eight hours to comply, rendering any appeal right illusory. (Pl. Br. at 19.)

Each of Plaintiff's arguments fails. *First*, Plaintiff's claim that her request was not given individualized consideration is "mere speculation" that the Court need not credit in deciding a motion to dismiss.[9] *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012). *Second,* the

---

[8] It is apparent from the "Preliminary Notice of Disciplinary Action" appended to the Complaint that Plaintiff was provided with the opportunity for an additional hearing. (ECF No. 30-9 ("If you desire a departmental hearing before the appointing authority on the above charge(s), notify it within 17 []days of the receipt of this form.").) Plaintiff does not plead that she requested or attended such a hearing, nor does she allege any ways in which that hearing would have been flawed. This failure to pursue all available process is potentially fatal to Plaintiff's procedural due process claim. *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

[9] Plaintiff alleges that, as a matter of policy, all religious exemption requests were categorically denied. This allegation is "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. Plaintiff supports this allegation by arguing that all religious accommodation requests were denied and that Moore told Plaintiff that these denials came from "downtown." (FAC ¶ 78.) However, the fact that all religious accommodations requests were denied is not sufficient to show a policy of categorically denying those requests, and the vague reference to "downtown" establishes, at absolute most, *who* made the decision to deny Plaintiff's request, not *how* that decision was made (*i.e.*, through an individualized or categorical process).

letter appended to Plaintiff's FAC belies her assertion that she was not provided any specific reasons as to why her request was denied.[10] (*See* ECF No. 30-4.) According to the letter, which was addressed to Plaintiff, "[e]ssential functions of [her] position necessarily require regular, direct and unavoidable contact with patients and other staff at the facility;" her specific job duties required her "to conduct patient assessment, medication distr[i]bution, and other related Nursing duties for the patients on a daily basis;" her employer determined that an accommodation would "pose an undue hardship on the facility and the Department of Health" because it would "create a threat to the safety of patients, staff and others at the facility;" and her employer concluded that accommodations could not be granted because they "would require removing essential job functions of [her] position in order to maintain safety," her work cannot be performed remotely, and there are no alternative positions available. (*Id.*)

*Third*, Plaintiff's claim about an illusory appellate process fails on the law. As the Supreme Court has long held, "the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance." *Ohio ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cnty.*, 281 U.S. 74, 80 (1930) (collecting cases); *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996) ("[D]ue process does not independently require that the State provide a right to appeal."); *cf. Marsh v. Del. State Univ.*, 05-87, 2006 WL 141680, at *3 (D. Del. Jan. 19, 2006) ("[C]ourts have also held that the right to appeal the school's decision is not required to satisfy the Due Process Clause." (citing *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005))). Accordingly, her complaint that the short time to appeal rendered her opportunity to do so illusory, does not demonstrate a procedural due process violation because the initial exemption

---

[10] When an exhibit to a complaint contradicts the complaint, "the exhibit[] control[s]." *Vorcheimer v. Phila. Owners Assoc.*, 903 F.3d 100, 112 (3d Cir. 2018).

request provided her with an adequate opportunity to be heard. *See Ohio ex rel. Bryant*, 281 U.S. at 80.

The second process Plaintiff contests is her March 29, 2022 suspension hearing. Plaintiff argues that she was denied due process because the hearing officer failed to consider her challenges to the denial of the religious exemption. (Pl. Br. at 19.) Again, Plaintiff's contentions are unavailing. As discussed above, Plaintiff was provided with adequate due process protections in requesting her religious exemption, and due process does not require an opportunity to appeal that determination. Rather, hearings such as this one "need only allow for 'a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Terry v. Borough*, 660 F. App'x 160, 164 (3d Cir. 2016) (quoting *Loudermill*, 470 U.S. at 545–46). Plaintiff was given exactly that. She was informed that she was being charged for failing to comply with the Executive Order and given an opportunity to dispute the charge. That the outcome of the process did not turn out in Plaintiff's favor, obviously, cannot be contorted into a procedural due process violation. *See Lopez v. Att'y Gen. U.S.*, 757 F. App'x 163, 165 (3d Cir. 2018) ("We will not recast mere disagreement with the BIA's decision as a procedural due process violation.").

Accordingly, the Court will join courts in this Circuit and others in rejecting similar procedural due process challenges to COVID-19 vaccine mandates. *See, e.g.*, *Kehl v. Allegheny Cnty.*, 24-60, 2025 WL 2430038, at *7 (W.D. Pa. Aug. 22, 2025); *Chesher v. Allegheny Cnty.*, 22-1822, 2024 WL 2248207, at *11 (W.D. Pa. May 16, 2024); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 435–36 (S.D.N.Y. 2022).

Additionally, the Court dismisses Plaintiff's procedural due process claim on the second prong of qualified immunity. *Spady*, 800 F.3d at 637. For the reasons discussed above, it was not

clearly established that Plaintiff was entitled to a greater explanation of the denial of her religious exemption, an opportunity to appeal that denial, or a review of that denial during her March 29, 2022 hearing. Plaintiff attempts to avoid qualified immunity by citing *Matthews* for the proposition that "due process requires 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" (Pl. Br. at 18–19 (quoting *Matthews*, 424 U.S. at 333).) However, that general statement cannot be expounded to constitute that it was "clearly established" that Plaintiff was entitled to the particular procedural protections that she seeks. *See Spady*, 800 F.3d at 638 ("[C]ourts are 'not to define clearly established law at a high level of generality.'" (quoting *al-Kidd*, 563 U.S. at 742)). As the United States Court of Appeals for the Ninth Circuit has explained, "because procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks omitted); *see also Cioffi v. Borough of Englewood Cliffs*, 16-4536, 2017 WL 319182 (D.N.J. Jan. 23, 2017) (citing *Brewster* for this proposition). Plaintiff has not identified any closely corresponding precedent, and neither has the Court. Accordingly, Count II is dismissed.

### B.    SUPPLEMENTAL JURISDICTION

Regarding Plaintiff's remaining claims, which are all brought pursuant to state law (NJCRA and NJLAD), the Court determines whether it will exercise supplemental jurisdiction over those claims. To adjudicate a case, a federal court must have subject matter jurisdiction based on either federal question or diversity. 28 U.S.C. §§ 1331, 1332; *see also Rockefeller v. Comcast*

*Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011) (per curiam).[11] Here, the Court exercised federal question jurisdiction based on Plaintiffs' claims for relief under Section 1983 (Counts I through IV). *See Rockefeller*, 424 F. App'x at 83. While the Court has supplemental jurisdiction over Plaintiff's state law claims (Counts V through VIII) under 28 U.S.C. § 1367(a), subsection (c) gives district courts discretion to decline to hear claims over which they otherwise would have supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction." *Shaffer v. Twp. of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010) (second alteration in original) (internal quotation marks omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").

As set forth above, the Court has dismissed all of Plaintiff's federal claims under Section 1983 (Counts I through IV). These claims formed the sole basis for the Court's subject matter jurisdiction over this case. Plaintiff's related state law claims under the NJCRA and NJLAD were only properly before this Court pursuant to supplemental jurisdiction. Because no federal claims remain, pursuant to Section 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and, therefore, dismisses them (Counts V through VIII).

---

[11] While not raised by the parties, district courts have an "ever-present obligation to satisfy themselves of their subject matter jurisdiction." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). Thus, a court may raise the issue of its own subject matter jurisdiction *sua sponte* at any time. *Id.*

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion (ECF No. 41) is **GRANTED**. The FAC is

**DISMISSED without prejudice** in its entirety.

An appropriate Order will accompany this Opinion.

<u>Dated</u>: September 18, 2025

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**